[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 16, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-12486
Non-Argument Calendar

_____

D. C. Docket No. 04-00006-CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTONIO BERNARD FIELDS,
a.k.a. Tony Fields,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 16, 2005)

Before CARNES and PRYOR, Circuit Judges, and FORRESTER[*], District Judge.

_____

[*] Honorable J. Owen Forrester, United States District Judge for the Northern District of Georgia, sitting by designation.

CARNES, Circuit Judge:

Antonio Fields pleaded guilty to one count of conspiracy to distribute and to possess with the intent to distribute more than five kilograms of cocaine and more than fifty grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. He was sentenced to 360 months' imprisonment and ten years of supervised release.

Fields contends that the district court erroneously imposed a two-level sentencing enhancement for possession of a dangerous weapon, pursuant to U.S.S.G. § 2D.1(b)(1), and a three-level sentencing enhancement for playing a supervisory role in a criminal enterprise that involved five or more participants, pursuant to U.S.S.G. § 3B1.1(b). Fields also contends for the first time on appeal that the district court violated his Sixth Amendment rights by determining his sentence based on facts that were neither charged in his indictment nor proven to a jury beyond a reasonable doubt. Fields originally based this argument on <u>Blakely v. Washington</u>, 542 U.S. ___, 124 S. Ct. 2531 (2004), but shifted his reliance to <u>United States v. Booker</u>, 543 U.S. ___, 125 S. Ct. 738 (2005), after that decision was released.

## I.

Fields was involved in a conspiracy to possess and distribute cocaine and

cocaine base. He distributed cocaine to several people, one of whom was codefendant Marcus Nelson. The two of them often met at Nelson's residence. Fields supplied Nelson with half a kilogram of cocaine a week, and Nelson redistributed it to his own customers. Nelson usually sold powder cocaine, though it was important to his customers that the cocaine be suitable for cooking into crack. One of Nelson's customers was Reginald Denson, another codefendant. Denson sold both powder and crack cocaine regularly from his own residences. On at least one occasion, Denson sold drugs directly from Nelson's residence.

When Fields, Nelson, and Denson were arrested, DEA agents recovered a loaded Lorcin .380 semiautomatic handgun from Nelson's residence. The DEA also recovered two firearms—a rifle with a wooden stock and a .410 shotgun—from Denson's residences.

## II.

Fields first contends that district court erroneously imposed a two-level sentencing enhancement for possession of a dangerous weapon during the commission of the crime, pursuant to U.S.S.G. § 2D.1(b)(1). He stresses that no firearm was found on his own property.

This enhancement may be applied when a firearm is possessed by a co-conspirator. "[F]or a § 2D1.1(b)(1) firearms enhancement for co-conspirator

possession to be applied to a convicted defendant, the government must prove by a preponderance of the evidence:  (1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant."  United States v. Gallo, 195 F.3d 1278, 1284 (11th Cir. 1999).

Fields does not dispute that Nelson and Denson were his co-conspirators or that he was a member of the conspiracy at the time that those two possessed the firearms.  Instead, Fields argues that the firearms were not possessed in furtherance of the conspiracy and that, even if they were, he had no reason to foresee Nelson and Denson would possess firearms in furtherance of the conspiracy.

As to Fields's argument that the firearms were not possessed in furtherance of the conspiracy, Application Note 3 to U.S.S.G. § 2D.1(b)(1) advises:  "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  Once the government shows that a firearm was present, "the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable."  United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995) (per curiam). Fields has not carried that burden.

4

Fields has not pointed to any evidence suggesting that a connection between the firearms and the conspiracy was clearly improbable. The firearms were present at locations from which Nelson and Denson sold drugs. The two co-conspirators trafficked in lucrative and illegal drugs. Undoubtedly, part and parcel of their business was dealing with individuals who were drug-addicted, many of whom had been convicted of crimes. It is not clearly improbable that Nelson and Denson felt the need to protect their inventory and proceeds as well as themselves while they were engaging in that high risk activity. The district court did not clearly err in finding that their possession of the firearms was in furtherance of their drug conspiracy, a conspiracy of which Fields was a member. See United States v. Hansley, 54 F.3d 709, 716 (11th Cir. 1995) (citing Hall, 46 F.3d at 63–64); United States v. Gates, 967 F.2d 497, 500 (11th Cir. 1992).

Fields's other argument, that it was not reasonable that he would foresee the possession of firearms by his co-conspirators, is also without merit. For the same reasons the evidence permitted a finding that there was a connection between the firearms and the drugs, it permitted a finding that the co-conspirators possession of the weapons was reasonably foreseeable to Fields. See United States v. Freyre-Lazaro, 3 F.3d 1496, 1506 (11th Cir. 1993) ("Finally, it was reasonably foreseeable that [the defendant's co-conspirator], in furtherance of the conspiracy,

5

would carry a weapon while transporting thirteen kilograms of cocaine."). Besides, Fields and Nelson grew up together, referred to each other as cousins, and were in almost daily telephone contact. Their close relationship increases the probability that Fields would be able to foresee Nelson's actions, including his possession of a firearm in connection with his drug business.

The district court did not clearly err in finding that it was reasonably foreseeable to Fields that his co-conspirators would possess firearms in furtherance of their conspiracy. There was no error in the application of the U.S.S.G. § 2D.1(b)(1) sentencing enhancement for possession of a firearm.

## III.

Fields next contends that the district court erroneously enhanced his sentence, pursuant to U.S.S.G. § 3B1.1(b), for Fields' role in the conspiracy. Section 3B1.1(b) provides for a three-level sentencing enhancement "[i]f the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive." Fields does not dispute that he had a supervisory role in the conspiracy, but he does dispute that the conspiracy involved five or more participants.

Fields concedes that Nelson and Denson were involved in the conspiracy with him. Testimony at the sentencing hearing also established that Christian

Edwards had transported drugs for Fields on a number of occasions, that Sandy Telfort had purchased a cutting agent for Fields, that Andrea Ford had collected money for Fields from one of his drug customers, and that Reco Freeman had transported and delivered drugs for Fields. The district court did not clearly err in concluding that at least five participants had been involved in the conspiracy. Therefore, the U.S.S.G. § 3B1.1(b) enhancement was properly applied.

**IV.**

Finally, Fields asserts that the district court committed plain error by using extra-verdict enhancements to increase his sentence under a mandatory guidelines regime in violation of the Supreme Court's decision in Booker. "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005) (quotations, citations, and internal marks omitted).

As was the case in Rodriguez, the first and second prongs of the plain error analysis are satisfied. See id. at 1298–99. We therefore move to the third prong

7

which requires us to determine whether Fields has carried his burden of demonstrating that the error has affected his substantial rights. See id. at 1299. In order to determine that, "we ask whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Id. at 1301.

In Rodriguez we explained that: "[I]f it is equally plausible that the error worked in favor of the defense, the defendant loses; if the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses. Where errors could have cut either way and uncertainty exists, the burden is the decisive factor in the third prong of the plain error test, and the burden is on the defendant." Id. at 1300. Where "[w]e just don't know" whether the defendant would have received a lesser sentence if the guidelines had been advisory, the defendant has not met his burden of showing prejudice. Id. at 1301.

Fields's contention that he was prejudiced by the mandatory nature of the guidelines rests entirely on the fact that the district court imposed the lowest sentence in the guidelines range. We agree with the First, Fourth, Fifth, and Eighth Circuits that the fact that the district court sentenced the defendant to the bottom of the applicable guidelines range establishes only that the court felt that sentence was appropriate under the mandatory guidelines system. It does not establish a

8

reasonable probability that the court would have imposed a lesser sentence under an advisory regime. See United States v. Serrano-Beauvaix, 400 F.3d 50, 55 (1st Cir. 2005) ("[The defendant] relies upon the district judge's statement at the sentencing hearing: 'I have to consider the fact that I cannot sentence him to 60 months. The lowest I can sentence him on that particular situation is 63.' This statement, he argues, makes it 'clear that the district court would have sentenced [him] to 60 months in prison instead of 63 on count one.' Not so. . . . [T]he court's statement was a simple statement of fact."); United States v. White, ___ F.3d ___, 2005 WL 949326, *12 (4th Cir. Apr. 26, 2005) (concluding "that White has not met his burden of demonstrating that he suffered actual prejudice from being sentenced under a mandatory guidelines regime" by demonstrating that he was sentenced at the low end of the applicable range); United States v. Bringier, ___ F.3d ___, 2005 WL 730073, *5 n.4 (5th Cir. Mar. 31, 2005) (per curiam) ("[T]he fact that the sentencing judge imposed the minimum sentence under the Guideline range (360 months) alone is no indication that the judge would have reached a different conclusion under an advisory scheme."); United States v. Pirani, ___ F.3d ___, 2005 WL 1039976, *7 (8th Cir. Apr. 29, 2005) (en banc) ("[S]entencing at the bottom of the range is the norm for many judges, so it is insufficient, without more, to demonstrate a reasonable probability that the court

9

would have imposed a lesser sentence absent the <u>Booker</u> error.").

A pre-<u>Booker</u> sentence at the low end of a guidelines range at most deprives the government of an argument that it might otherwise have made, which is that if the court had wanted to impose a lesser sentence it could have done so under the mandatory guidelines range but did not.  However, the government does not need that argument on the third-prong, prejudice inquiry because it does not have the burden.  The defendant does.  <u>Rodriguez</u>, 398 F.3d at 1299.  And the fact that the district court went as low as it could under the mandatory guidelines system, without more, is not enough to carry that burden.  An argument based upon that fact alone is too speculative, and more than speculation is required.  <u>Id.</u> at 1300–01; <u>see also</u> <u>White</u>, ___ F.3d at ___,  2005 WL 949326, *12 ("Although White received a sentence at the bottom of the applicable guideline range, the record as a whole provides no non-speculative basis for concluding that the treatment of the guidelines as mandatory affected the district court's selection of the sentence imposed." (quotation and internal marks omitted)).

**AFFIRMED**.[1]

---

[1]  This case was originally docketed for oral argument, but the panel unanimously determined to decide it based on the briefs.  <u>See</u> 11th Cir. R. 34-3(f).