[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 03-13448
Non-Argument Calendar
_____

D.C. Docket No. 03-00025-CR-3-LAC

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**JUNE 23, 2005**
**THOMAS  K. KAHN**
**CLERK**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM G. MCLAUGHLIN,

Defendant-Appellant.

_____

No. 03-13468
Non-Argument Calendar
_____

D.C. Docket No. 03-00025-CR-3-002-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KAREN B. COBB,

Defendant-Appellant.

_____

Appeals from the United States District Court for the
Northern District of Florida
_____

(June 23, 2005)

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

William G. McLaughlin and Karen B. Cobb appeal their sentences, imposed following their guilty pleas to conspiracy to manufacture and posses with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii) and 846. We affirm their sentences.

## I. DISCUSSION

A.    *Substantial risk of harm to a minor*

McLaughlin asserts the district court erred in finding a substantial risk of harm to a minor occurred because the risk of harm relating to the presence of a minor in the vicinity of a methamphetamine lab, without more, does not constitute a substantial risk of harm. Cobb contends the district court erred in finding a substantial risk of harm to a minor where the presence of the minor, her daughter, Courtney Owen, was not reasonably foreseeable to Cobb as she did not know that Courtney was at the residence that day, nor had she been at the residence with

Courtney that day, nor had she ever been on the premises when chemicals were present or during the manufacturing process.

We review the district court's factual findings for clear error and its application of the Guidelines to those facts de novo.[1] *United States v. Florence*, 333 F.3d 1290, 1292 (11th Cir. 2003). "If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent," the offense level shall be increased by six. U.S.S.G § 2D1.1(b)(5)(C) (2002). The commentary to § 2D1.1 provides certain factors a court must consider in determining whether the offense created a substantial risk of harm to human life or the environment for the purposes of § 2D1.1(b)(5)(C): "(i) [t]he quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored[;] (ii) [t]he manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances[;] (iii) [t]he duration of the offense, and the extent of the manufacturing operation[; and] (iv) [t]he location of the laboratory (*e.g.*, whether the laboratory is located in a residential neighborhood or a remote area), and the

---

[1] *United States v. Booker*, 125 S. Ct. 738 (2005), does not alter our review of application of the Guidelines. *United States v. Crawford*, 11th Cir., 2005, __ F.3d __ (No. 03-15136 at *6, May 2, 2005).

number of human lives placed at a substantial risk of harm." U.S.S.G. § 2D1.1, comment. (n.20(A)) (2002). "Minor" is defined as "an individual who had not attained the age of 18 years." U.S.S.G. § 2D1.1, comment. (n.20(B)) (2002).

Based on the factors enumerated in the application note to § 2D1.1(b)(5)(C), the district court did not err in applying the enhancement. The court stated the enhancement was supported by the dangerous nature of the chemicals contained in open containers, the location of the chemicals and starter fluid near the stove and open oven, which was on, and the headaches experienced by Courtney and the officers, which the district court attributed to the chemical vapors. The district court's findings are supported by the record. The evidence before the court was that: (1) Agent Cosey and Officer Watson immediately detected a strong smell of denatured alcohol coming from the house when they stepped out of the car; (2) Courtney, as well as several officers, experienced headaches at the scene, which Agent Cosey attributed to the fumes; (3) chemicals were found in the house that were consistent with the manufacturing of methamphetamine, including starter fluid and denatured alcohol; (4) there was hardly a space in the house that did not have materials associated with the manufacture of methamphetamine; (5) the shed, located between 50 and 60 feet from the house, contained a homemade condenser system used for manufacturing anhydrous ammonia, which

is a very dangerous substance; (6) mason jars of chemicals, including denatured alcohol, were located in the kitchen near the oven that was on and open; and (7) batteries with the lithium strips removed, which can self-ignite where there is a sufficiently high moisture content in the air if not placed into a petroleum product, were found in an ashtray.

In response to McLaughlin's arguments, the evidence supports that Courtney was at the residence for more than one hour as she stated she was dropped off in the afternoon and the officers did not arrive to retrieve her until 11:00 P.M. Next, the evidence showed many of the officers experienced headaches; thus, it is more likely that Courtney's headache was caused by the fumes and not her eyeglasses prescription. Also, the evidence does not support the argument the smell of denatured alcohol was coming from the alcohol McLaughlin used for paint jobs as the smell was extremely strong, and the denatured alcohol was found in jars in the kitchen mixed with other substances. Additionally, the fact the residence was located in the country does not support the argument there was no substantial risk of harm to the life of a minor as Courtney was actually present at the residence. Further, as to the speculation the situation could not have been very dangerous since the officers left the oven on for warmth and were not wearing a respiratory device inside the home, at least some of the chemicals were

removed from the home and set outside to be collected by the hazardous materials disposal company, which likely would have decreased the risk to the officers. Finally, there is no support for the contention that for substantial risk of harm to the life of a minor to exist, the situation must involve either an obvious explosive condition or fire, or the presence of very young children.

Cobb argues the six-level enhancement should not have been applied to her because she had no knowledge of Courtney's presence at the residence that day. However, neither the Guidelines nor any binding law require the defendant's knowledge of the presence of minors in order to apply the enhancement under § 2D1.1(b)(5)(C), and "[l]anguage in the [Guidelines] is to be given its plain and ordinary meaning." *United States v. McClain*, 252 F.3d 1279, 1286 (11th Cir. 2001). Further, this Court has ruled the district court is not required to identify a specific minor at risk before imposing the enhancement. *See Florence*, 333 F.3d at 1293. It is logical if the district court is not required to identify a specific minor, the court is also not required to find a defendant knew of the minor's presence.

Cobb argues her case is analogous to *United States v. Simpson*, 334 F.3d 453 (5th Cir. 2003), in which the Fifth Circuit determined that (1) no evidence had been presented to support the presence of a minor while co-conspirator Mills was

involved; and (2) Mills could not have reasonably foreseen his participation would endanger the infant child of a co-conspirator because the co-conspirator's wife had not yet given birth to the child during Mills' involvement, and there was no evidence that Mills knew she was pregnant. *Id.* at 458–59. Even if this Court were to adopt the reasonable foreseeability requirement in *Simpson*, it was reasonably foreseeable that Courtney would visit Cobb as Cobb was Courtney's mother, and Cobb testified Courtney had visited her home three or four times and loved to come over and ride the four wheeler. Further, Cobb's mother testified Courtney would stay overnight at Cobb's on occasion. Thus, the district court did not err by applying the enhancement under § 2D1.1(b)(5)(C), because the record supported the conclusion the offense created a substantial risk of harm to the life of a minor, and the Government was not required to establish that Cobb knew of her daughter's presence at the residence.

B. *Blakely/Booker*

McLaughlin and Cobb also argue the district court erred by enhancing their sentences under the Guidelines based on facts decided by the district court and not a jury. Because McLaughlin and Cobb did not raise a constitutional objection to the district court's application of the Guidelines, it is reviewed for plain error. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). "An appellate

court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations and citations omitted).

At their change of plea hearing, Cobb and McLaughlin admitted that (1) Courtney had been present at the house, (2) they had operated an active methamphetamine lab at the house and nearby shed, including a dangerous anhydrous ammonia production facility in the shed, and (3) "numerous items . . . consistent with the manufacture of methamphetamine" were found "throughout the entire home and throughout the shed." They never explicitly admitted, however, that they turned on the stove, making the conditions even more hazardous. Because of the complex nature of the facts required for the substantial risk of harm to the life of a minor enhancement under U.S.S.G. § 2D1.1, it is difficult to sort out whether McLaughlin and Cobb admitted to the exact facts which formed the basis for the district court's enhancement. Thus, there is arguably error that is plain because their sentences were increased under a mandatory guidelines system

because of an enhancement based on facts found by the judge that were neither admitted by the defendants nor found by the jury. *Id.* at 1298–99.

As to the third prong, the burden is on McLaughlin and Cobb to demonstrate the plain error affected their substantial rights, and the error actually made a difference. *Id.* at 1299. "[I]n applying the third prong, we ask whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." *Id.* at 1301. A review of the sentencing transcript reveals no indication the district court would have sentenced differently under an advisory Guidelines system. Although Cobb was sentenced at the low end of the Guidelines, that fact alone does not establish a reasonable probability the court would have imposed a lesser sentence under an advisory regime. *See United States v. Fields*, 11th Cir., 2005, __ F.3d __ (No.04-12486, May 16, 2005). Thus, there is no plain error under *United States v. Booker*, 125 S. Ct. 738 (2005).

## II. CONCLUSION

The district court did not err in imposing an enhancement under U.S.S.G. § 2D1.1(b)(5)(C). Additionally, neither McLaughlin's nor Cobb's sentence violates *Booker*.

AFFIRMED.