[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**July 05, 2005**
**THOMAS K. KAHN**
**CLERK**

No. 04-11669
Non-Argument Calendar

_____

D. C. Docket No. 03-00374-CR-2-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC KIMBLE, a.k.a Taz,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 5, 2005)**

Before HULL, WILSON and FAY, Circuit Judges

PER CURIAM:

Eric Kimble appeals his 24-month sentence imposed after he pled guilty,

without a plea agreement, to conspiracy to possess with intent to distribute heroin,

in violation of 21 U.S.C. §§ 846, 841(b)(1)(C). He argues that (1) the district court violated his Sixth Amendment right to a jury by enhancing his sentence based on judicial factfindings as to drug type and quantity; (2) failed to make an individualized finding as to the foreseeability that the object of the conspiracy would be heroin; and (3) failed to find beyond a reasonable doubt that the object of the conspiracy was, in fact, heroin. For the reasons set forth more fully below, we affirm.

According to the undisputed paragraphs of the pre-sentence investigation report ("PSI"), Howard Gregory, an inmate, notified an FBI agent that another inmate, Darrel Frazier, had informed him that Frazier could smuggle drugs into the Atlanta United States Penitentiary ("USPA") through a correctional officer. Frazier then told Gregory to have Gregory's sister, Darlene Smith, send $100 to "N.Cook" in Knoxville, Tennessee. Once the transfer had been confirmed, Frazier would give Gregory the name of the officer who could smuggle drugs.

An FBI agent, acting undercover as Smith, wired $100 to "Cook." After Frazier learned of the successful transfer, he instructed Gregory to have Smith purchase 12 grams of heroin and that $1000 would be needed to pay the correctional officer for bringing the drugs into the penitentiary. The FBI provided Gregory with a phone number and instructed him to pretend that the number was

2

Smith's and to deliver the number to Frazier. The FBI's undercover agent was subsequently contacted by a female named "Keisha," who indicated that she wanted to meet that day in order to pick up the drugs, a request the agent refused at the time.

The undercover agent later contacted "Keisha" and arranged a meeting at a mall, where the agent delivered $1000 and 12 grams of a substance that was supposed to be heroin, but in reality was 12 grams of hashish oil, a substance resembling heroin, substituted by the FBI for purposes of the transaction. After the transaction, "Keisha" was taken into custody and immediately agreed to cooperate with the FBI. She told agents that she was picking up the package for Eric Kimble, an inmate at the USPA. Kimble called "Keisha" several times while she was being transported to the FBI's office, and told "Keisha" that he would call her back with instructions on where to take the package and money. Later that day, Kimble told "Keisha" that she would be telephoned by someone named "Flo," and shortly thereafter, "Keisha" received a call from "Flo," who set up a meeting at a mall and gave "Keisha" a telephone number, later identified as belonging to Flonaise Yvette Arnold.

Under FBI surveillance, "Keisha" met with Arnold, who was observed receiving the package along with $540 from "Keisha," and Arnold was arrested.

3

Arnold told the FBI that she had met Kimble through her work as a dental assistant at the USPA, and that Kimble had instructed her on a previous occasion to pick up a brick of marijuana and $1000 from a woman named Melissa, which she did, and subsequently delivered the marijuana to Kimble in two separate deliveries while keeping the $1000. She further admitted that, on the day of her arrest, Kimble had instructed her to meet "Keisha" in order to pick up money and a package that she believed, based on the previous delivery, would contain drugs.

Kimble was later interviewed, and admitted that (1) he, Arnold, and Frazier had participated in several drug transactions, (2) Arnold had delivered marijuana to him on two separate occasions, (3) Frazier had set up a drug deal for a package of heroin, and (4) he was on the phone with Arnold when "Keisha" arrived to deliver the heroin.

At his plea hearing and at sentencing, Kimble admitted to participating in the drug conspiracy, but denied that the object of the conspiracy was to smuggle heroin. Kimble explained that he did not find out that the deal was for heroin until after he had instructed Arnold to meet with "Keisha" and that, after speaking with Arnold, he spoke with Frazier and discovered that the deal was for heroin. At that point, he attempted to call Arnold, who was already in custody. Kimble did not, however, state that he tried to call off the deal. In short, Kimble admitted

4

conspiring to bring drugs into the prison, but on the transaction leading to the instant offense on June 3, 2003, Kimble claimed he did not know until the very end that the substance was heroin.

The PSI reflected that Kimble's base offense level was 16, pursuant to U.S.S.G. § 2D1.1(c)(12), based on a finding that he was responsible for 12 grams of heroin, equivalent to 12,000 grams of marijuana, and an additional 907.2 grams of marijuana as relevant conduct, for a total of 12,907.2 grams of marijuana. He then received a two-level enhancement because the offense involved distribution of a controlled substance in prison, U.S.S.G. § 2D1.1(b)(3). After a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a), Kimble's total offense level was set at 15. Kimble's criminal history category was III, which at offense level 15, set a guidelines range of 24-30 months' imprisonment.

Kimble objected to his base offense level, arguing that the offense level should only be 8 on the basis of the 907.2 grams of marijuana because Kimble believed that the object of the conspiracy was marijuana, not heroin and, therefore, the heroin should not be counted.

At sentencing, the district court adopted all factual findings in the PSI that were not objected to and then framed the ultimate issue for sentencing as: "whether [Kimble's] offense level should be calculated based on the marijuana equivalent of

5

heroin or just on marijuana."

Ultimately, the district court found that "for the reasons that I draw from the guilty plea colloquy and everything else that's been presented in this matter, it is [the court's] view that [Kimble] is responsible for . . . the heroin equivalent of marijuana."

After hearing arguments from the government and Kimble as to what sentence he should receive within the guidelines range, the court found the following:

> I'm taking into account all the facts of this case . . . . And recognizing as well that while the court agrees with the government that he should be sentenced on the quantity that arises from the heroin conspiracy as opposed to a marijuana conspiracy, recognizing as well that in Mr. Kimble's mind . . . he did not begin for this to be a heroin conspiracy, but has nonetheless suffered the consequences of that. . . . As I gather from the report . . . while he has previously by his own admission been involved in marijuana distribution in the . . . prison system, he has not typically been involved in other more serious drugs. And I'm also taking into account the fact that he will suffer some additional penalty as a result of this conviction and that he's got some time left on his regular sentence. So, all things considered, I think it's appropriate to sentence him to a consecutive sentence of 24 months.

After sentencing Kimble, the court stated that it was its view that "a sentence in this case of 24 months . . . meets the goals of punishment and deterrence."

## I. Kimble's Apprendi/Blakely Challenge

On appeal, Kimble argues that his Sixth Amendment right to a jury under

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely v. Washington*, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) was violated because the indictment charging him with conspiring to possess with intent to distribute heroin did not specify a drug quantity, and the district court's decision to sentence Kimble to the marijuana equivalent of heroin, rather than just the marijuana previously brought into the prison during the conspiracy, impermissibly enhanced his sentence.

Because Kimble failed to lodge an objection to his sentence in the district court based on *Booker*, *Blakely*, *Apprendi*, or any constitutional grounds, we review for plain error only. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* (quotation and citation omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Here, Kimble's sentence was enhanced on the basis of judicial determinations of drug quantity not admitted by Kimble or found by a jury and, therefore, *Booker* Sixth Amendment error occurred under the first prong of the

7

plain error test. Id. Moreover, the error was plain. Id. at 1299. However, as we have held, "[t]he constitutional error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; the error is the mandatory nature of the guidelines once the guidelines range has been determined." Id. at 1301. Thus, in order to prevail under the third prong of plain error review, that his substantial rights were violated, Kimble must demonstrate "a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Id. Where "[t]he record provides no reason to believe any result is more likely than the other," a defendant cannot prevail under plain error review. Id.

Here, the only evidence leaning in Kimble's favor is that the district court sentenced Kimble to the lowest sentence in the applicable guidelines range. That, however, is insufficient, standing alone, to demonstrate that a remand is required under plain error review. United States v. Fields, ___ F.3d ___, No. 04-12486, slip op. at 2301 (11th Cir. May 16, 2005). "An argument based upon that fact alone is too speculative, and more than speculation is required." Id. Moreover, in the instant case, the district court stated that it had taken into account all of the facts of the case and, "all things considered," thought a 24-month sentence was "appropriate" and "[met] the goals of punishment and deterrence." Therefore,

8

Kimble has not met his burden of showing a reasonable probability that his sentence would have been different in the absence of a mandatory guidelines system.

## II. Reasonable Foreseeability of Heroin for Sentencing

Next, Kimble argues that the district court erred by sentencing him on the basis of 12 grams of heroin because it was not reasonably foreseeable to him that the conspiracy, which previously had been for importing only marijuana into the prison, would involve heroin.

We review a district court's application of the sentencing guidelines de novo and its findings of fact for clear error. United States v. Trujillo, 146 F.3d 838, 847 (11th Cir. 1998). Legal interpretations of the guidelines are reviewed de novo. United States v. Johnson, 375 F.3d 1300, 1301 (11th Cir. 2004). Moreover, Booker does not alter our review of a district court's guidelines calculations. United States v. Crawford, ___ F.3d ___, No. 03-15136 slip op. at 2075 (11th Cir. May 2, 2005).

We have "emphasize[d] the time-honored rubric that a plea of guilty is a judicial admission of the truth of the factual allegations of the indictment." United States v. Strother, 458 F.2d 424, 426 n.3 (5th Cir. 1972); see also United States v. Hall, 457 F.2d 1324, 1328 (5th Cir. 1972) ("[it] must be borne in mind that

whether or not either conspiracy existed is a question of fact, now solemnly admitted by the defendant-appellant by his pleas of guilty.").

Moreover, caselaw indicates that, to be sentenced for heroin, a conspirator need not know that the drugs he conspired to possess were heroin. See, e.g., United States v. Mejia, 97 F.3d 1391, 1392-93 (11th Cir. 1996) (upholding a conviction for possession and conspiracy to possess with intent to distribute cocaine despite the fact that the defendant never mentioned anything about cocaine to authorities); United States v. Gomez, 905 F.2d 1513, 1514-15 (11th Cir. 1990) (holding that, in order to receive the mandatory minimum sentence under 21 U.S.C. § 841(b)(1) the defendant need not know the type of drug involved, or the quantity at sentencing, reasoning that "those who, acting with a deliberate anti-social purpose in mind, become involved in illegal drug transactions, assume the risk that their actions will subject them to enhanced criminal liability.").

It is undisputed that the indictment in question charged Kimble with conspiracy to possess with intent to distribute heroin and that Kimble pled guilty to that charge, notwithstanding his insistence that he was not aware that the transaction leading to the instant charge was for heroin until "it was too late." Moreover, Kimble was given an opportunity to withdraw his guilty plea, which he declined to do, and he did not, at any point, argue that he had attempted to

withdraw from the conspiracy. The "object" of the conspiracy as charged in that indictment was for heroin and, therefore, we conclude that the district court, to the extent it bound Kimble to his guilty plea, committed no error.

Second, as a factual matter, Kimble admitted to being part of a conspiracy to bring controlled substances into the prison and further admitted learning that the drug transaction in the instant case was heroin, even if that knowledge was not attained until it was "too late" to "dissociate" from the conspiracy itself. Specifically, the PSI indicates that after "Keisha" received two small packages and $1,000, Kimble asked Frazier what was in the packages, and Frazier replied, "Mexican Mud," a street name for heroin. Kimble told Arnold to call "Keisha," and was on the phone with Arnold when "Keisha" arrived to deliver the drugs. No factual objection was made to Kimble's conduct as described in the PSI, and it may be deemed admitted. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005). Finally, at his sentencing, Kimble, through counsel, admitted that the object of the conspiracy was heroin. Based on the foregoing, it cannot be said that the district court clearly erred by finding that Kimble had some knowledge that he was a member in a drug conspiracy, the object of which was heroin.

11

### III. Sentencing For Multiple-Object Conspiracies

Lastly, Kimble "maintains that the instant case involves a multiple-object conspiracy; one involving marijuana and one involving heroin." He further argues that the district court failed, pursuant to U.S.S.G. § 1B1.2(d), to determine beyond a reasonable doubt which of the offenses Kimble conspired to commit and, therefore, exceeded the maximum sentence that could have been imposed for the lesser object offense of conspiring to possess and distribute marijuana.

Pursuant to U.S.S.G. § 1B1.3(d), "[a] conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." U.S.S.G. § 1B1.3(d).

In the instant case, the charging indictment did not charge a conspiracy to commit more than one offense, as the sole offense alleged was conspiracy to possess and distribute heroin on or about June 3, 2003 and, therefore, § 1B1.3(d) is not, by its plain language, applicable to the present case.

Therefore, we conclude that the district court did not err by failing to find beyond a reasonable doubt that the defendant conspired to commit any particular object offense because there was only one offense of conviction at issue, and Kimble pled guilty to it.

For the foregoing reasons, we conclude that the district court committed no reversible error when it imposed Kimble's sentence for conspiracy to possess with intent to distribute heroin.

**AFFIRMED.**