[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 26, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16140
Non-Argument Calendar
_____

D. C. Docket No. 04-00077-CR-T-26MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAUL ANTONIO SANCHEZ ALVARADO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 26, 2005)

Before BIRCH, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Raul Antonio Sanchez Alvarado appeals his 135-month sentence imposed after he pled guilty to one count of conspiracy to possess with intent to distribute five kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States. Alvarado appeals his sentence on United States v. Booker, 542 U.S. ___, 125 S. Ct. 738 (2005), grounds, arguing that the district court erred when it sentenced him under a mandatory guidelines scheme based on facts not found by a jury or admitted by him. We **AFFIRM**.

## I. BACKGROUND

According to the Presentence Investigation Report ("PSI"), in February of 2004, several individuals on a fishing vessel bearing the Colombian flag and named "Don Isaac," departed from Colombia, South America with the intention of smuggling a load of cocaine. On or about 21 February 2004, a United States aircraft on patrol spotted the Don Isaac approximately 432 nautical miles south of Acapulco, Mexico. Based on intelligence from other agents, a United States Coast Guard cutter, "Midget," intercepted and boarded the Don Isaac. In accordance with a bilateral agreement with the Colombian government, law enforcement agents searched the Don Isaac and found 214 bales of cocaine – weighing a total of 4,853 kilograms – concealed in a hidden compartment. Based upon a coordinate found on board the Don Isaac, as well as communications overheard on several

radio frequencies, the agents concluded that the Don Isaac was on its way to its drop-off point.

Near the suspected drop-off point, a helicopter crew spotted two "go-fast" vessels, each with three crew members and traveling at a high rate of speed. After the vessels were stopped, a boarding crew identified one of the crew members as Raul Antonio Sanchez Alvarado. All of the crew members of the go-fasts were Mexican nationals who had traveled from Mexico to meet the Don Isaac's crew and receive the bales of cocaine. Alvarado and all of the other Go-Fast crew members had cocaine residue on their skin or clothing.

Alvarado was subsequently one of fourteen men named in a two-count indictment returned in the Middle District of Florida on 25 February 2004. Alvarado and the others were charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 1903 (a), (g), and (j) and 21 U.S.C. § 960(b)(1)(B)(ii) (count 1), and possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 1903 (a) and (g), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii) (count 2). The indictment also included a forfeiture provision.

3

Alvarado agreed to plead guilty to count one of the indictment, and in exchange, the government promised to move for the dismissal of count two at sentencing. Alvarado's plea was subsequently accepted, and he was adjudged guilty.

The PSI calculated a base offense level of 38, a two-level decrease for meeting the safety valve provisions, a two-level reduction for acceptance of responsibility, and a one-level reduction in anticipation of the government filing a substantial assistance motion, for a total offense level of 33. Alvarado's criminal history category was I, and the PSI recommended a sentence between 135 to 168 month of imprisonment. Alvarado did not object to any of the PSI's calculations.

At sentencing, Alvarado made use of an interpreter and acknowledged that he had pled guilty to count one of the indictment. Even though Alvarado had not objected to the PSI's failure to recommend a minor-role reduction, the district court stated for the record that it would have overruled any such objection, in light of the quantity of cocaine involved. When asked if he had any Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), objections, Alvarado's counsel replied that he had "only . . . one guideline provision . . . which is drug quantity which we stipulated at the time of the plea." To clarify, the court noted that Alvarado's plea agreement was "open," and made sure this meant he preserved the right to appeal

the sentence imposed. Id. at 7. The court then noted that, to his credit, Alvarado

was the only one on a go-fast boat to "plead guilty and acknowledge his

responsibility." Id. Admitting that he had been less than totally forthcoming in

some way, and thus, did not deserve the § 5K1.1 motion, Alvarado still sought to

be sentenced at the low end of the range, to which the government did not object.

The court found that the low end was appropriate and subsequently sentenced

Alvarado to 135 months in prison and five years of supervised release. Alvarado

raised no objections to the sentence imposed.

## II. DISCUSSION

Because Alvarado failed to raise a constitutional challenge to his sentence in

the district court, we review his claim only for plain error. See United States v.

Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005), cert. denied, ___ U.S. ___, 125

S. Ct. 2935 (2005). Under plain error review,

> [a]n appellate court may not correct an error [that] the defendant failed to
> raise in the district court unless there is: "(1) error, (2) that is plain, and (3)
> that affects substantial rights. If all three conditions are met, an appellate
> court may then exercise its discretion to notice a forfeited error, but only if
> (4) the error seriously affects the fairness, integrity, or public reputation of
> the judicial proceedings."

Id. (internal citation omitted).

In Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 2534-38 (2004),

the Supreme Court held that the imposition of a sentencing enhancement based

5

upon facts neither admitted by the defendant nor found by the jury, under the State of Washington's mandatory guidelines system, violated the defendant's Sixth Amendment right to a jury trial. In Booker, the Supreme Court held that the Sixth Amendment as construed in Blakely applies to the Federal Sentencing Guidelines. Id., 125 S. Ct. at 746. To cure the Sixth Amendment violation, the Supreme Court excised the two parts of the Sentencing Reform Act that rendered the guidelines system mandatory, and thus, unconstitutional – 18 U.S.C. § 3553(b)(1) (making the guidelines binding on the district court) and 18 U.S.C. § 3742(e) (requiring de novo review of sentences on appeal). Id., 125 S. Ct. at 764. The Supreme Court made clear, however, that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id., 125 S.Ct. at 767.

Since Booker, we have held that there are two possible Booker errors. Statutory error arises from the district court's application of a mandatory – rather than advisory – sentencing scheme, while constitutional error arises only where judge-found facts increase a defendant's sentence under that mandatory scheme. See United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005); see also Rodriguez, 398 F.3d at 1298 (noting that a defendant's Sixth Amendment right to a jury trial is violated "where under a mandatory guidelines system a sentence is

increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury.").

Here, there was statutory error because the district court imposed a mandatory sentencing scheme. Shelton, 400 F.3d at 1330. Alvarado, however, stipulated to the drug quantity that determined his sentence; it was not a judge-found fact. Because of this, and because he was not sentenced beyond the applicable statutory maximum of life imprisonment, there was no constitutional Booker error. See Shelton, 400 F.3d at 1330 (finding no error where the defendant admitted drug quantity in the plea agreement and did not object to the factual findings in the PSI). Nevertheless, the statutory error satisfies the first two prongs of the plain error test.

Next, Alvarado must demonstrate that the error violated his substantial rights. Rodriguez, 398 F.3d at 1298. Rodriguez announced a test for substantial rights violations and stated that the defendant must show a "reasonable probability" that he would have received a lesser sentence if the guidelines were applied in an advisory fashion. Id. at 1299.

Here, however, the district court explicitly noted that it would have overruled any objection Alvarado may have made to the denial of a minor-role reduction. Moreover, even though Alvarado was sentenced at the bottom of the

7

applicable range, this alone will not create a reasonable probability that he would have received a lesser sentence under an advisory sentencing scheme. See United States v. Fields, 408 F.3d 1356, 1360-61 (11th Cir. 2005). Finally, the district court did not announce any alternate sentence and made no indication that it would have sentenced Alvarado differently under different circumstances. Thus, because Alvarado cannot show that his sentence would likely have been less if the guidelines were not mandatory, he cannot show that his substantial rights were affected when the district court sentenced him under a mandatory system. Therefore, he cannot satisfy the plain error test.

### III. CONCLUSION

Alvarado appeals his 135-month sentence and argues that the district court committed a Booker error when it sentenced him under a mandatory guidelines scheme based on facts not found by a jury or admitted by him. As we have explained, Alvarado cannot show that the district court committed plain error during sentencing. Accordingly, we **AFFIRM**.

8