[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 25, 2005
THOMAS K. KAHN
CLERK

No. 04-12772
Non-Argument Calendar

_____

D. C. Docket No. 03-60184-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAZARO GARCIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 25, 2005)

Before BIRCH, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Defendant-appellant, Lazaro Garcia, appeals his sentence of 151 months

imprisonment, imposed after he entered a plea of guilty as to possession of MDMA with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Garcia argues that his sentence would likely have been different had the district court applied the Sentencing Guidelines as advisory capacity rather than as mandatory. Unless Garcia can show that he preserved his Booker[1] challenge for appeal, we review his sentence for plain error and he must demonstrate a violation of his substantial rights. We find no plain error and AFFIRM.

## I. BACKGROUND

Pursuant to a written plea agreement with the government, Garcia entered a plea of guilty as to violation of 21 U.S.C. § 841(a)(1), possession of MDMA with intent to distribute. In late July 2003, agents from the DEA and the Broward County Sheriff's Office met Garcia through Pamela Diz, a drug dealer and codefendant, in an attempt to buy MDMA. After several unsuccessful attempts, transactions were completed on 26 July 2003 and 14 August 14 2003. Garcia was arrested and eventually charged with four counts of controlled substance violations.[2]

For sentencing purposes, he was held responsible for 25.7 grams of MDMA

---

[1]United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005).

[2]The original indictment listed only three counts, but it was to Count II of the four-count superceding indictment that Garcia entered a plea of guilty.

and 3.7 grams of crack cocaine, which were converted to the marijuana equivalent of 86.85 kilograms to yield a base level offense of 24. U.S.S.G. § 2D1.1(a)(3) (2002). Because he was at least 18 years old at the time of the offense, the offense involved a controlled substance, and he had at least two prior violent felony convictions, however, Garcia qualified as a career offender. U.S.S.G. § 4B1.1(a). This classification raised Garcia's base level offense from 24 to 32. See U.S.S.G. § 4B1.1(b). Three points were subtracted because Garcia admitted his involvement in the offense and accepted responsibility for his actions in accordance with U.S.S.G. § 3E1.1, leaving him with a total offense level of 29. Garcia's career offender status gave him a criminal history category of VI. U.S.S.G. § 4B1.1. All this resulted in a range of 151 to 188 months imprisonment.

At the sentencing hearing, Garcia objected to numerous convictions erroneously attributed to him in the presentence investigation report ("PSI"). He did not challenge the calculation of the sentencing guideline range applied to him or the factual or legal bases underlying that range. The court sustained the objection as to the erroneously listed convictions, but none of these convictions affected either Garcia's criminal history score or the determination of his status as a career offender.

Garcia also requested a horizontal departure under U.S.S.G. § 4A1.3. He

argued that, because he had committed two of the felonies contributing to his status as a career offender as long ago as 1991 and 1995, his criminal record over-represented the seriousness of his criminal history.[3] He also argued that his minor role in the 1991 offense and explanatory circumstances relating to the 1995 conviction ought to mitigate in his favor.[4] The district court denied Garcia's request for downward departure citing its limited ability to look behind state convictions in federal sentencing proceedings, Garcia's "pattern of persistent criminal behavior" over the years, and the "very, very serious" nature of the crimes of which he had been convicted. R2 at 60-61. In denying the request for downward departure, the court explained that it was "not prepared to find that placing Mr. Garcia [in] criminal history category [VI] substantially overrepresent[ed] his criminal history" or the likelihood that he would commit further crime. Id. at 61.

The court also considered the possibility of a downward departure for substantial assistance. The court found no basis for a downward departure at the time of sentencing, but did indicate a willingness to reconsider the sentence at

---

[3]In 1991, Garcia pled guilty to throwing a deadly missile into a building and to the unlawful possession of a firearm while engaged in a criminal offense. In 1995, Garcia was convicted of attempted burglary of an occupied dwelling.

[4]Garcia asserts that he committed the 1995 crime because he believed a neighbor was in trouble.

some later point should Garcia decide to supply substantial assistance. Finally, the court explicitly stated that "a sentence at the low end of the guideline range [was] completely appropriate," and sentenced Garcia to the minimum period allowed by the guidelines range, 151 months. R2 at 81. Garcia now raises a Booker error argument, asserting that the court might have imposed a lesser sentence had it considered the guidelines to be advisory rather than mandatory.

## II. DISCUSSION

We have held that a constitutional objection in the district court is necessary to preserve a Booker claim for appellate review. See United States v. Dowling, 403 F.3d 1242, 1245-47 (11th Cir.), cert. denied, No. 05-6234, 2005 WL 2494155 ( U.S. Oct. 11, 2005). Specifically, defendants must either refer to the Sixth Amendment or United States v. Apprendi, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed.2d 435(2000), or its progeny. See id. at 1246-47. Garcia's objections at sentencing were limited to factual objections to convictions erroneously listed in his PSI. His motion for a downward departure under U.S.S.G. § 4A1.3 was based on his claim that his categorization as a career offender over-represented his criminal history. Neither of these qualifies as a constitutional objection. Because Garcia failed to raise a constitutional objection at the sentencing hearing, he has failed to preserve a Booker objection.

5

Where a defendant fails to preserve a Booker objection for appellate review, we review a district court's sentence for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, __ U.S. __, 125 S. Ct. 2935 (2005). To prevail under a plain error standard, an appellant must show that there is: "(1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Shelton, 400 F.3d 1325, 1328-29 (11th Cir. 2005). Once we have these three elements, we may notice that error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1329 (internal citation omitted). This is a difficult standard to meet, and one to be exercised "sparingly" – only when "a miscarriage of justice would otherwise result." Rodriguez, 398 F.3d at 1298 (citation omitted).

The first two prongs of the plain error test are met, as the government concedes was the case here, when a statutory error exists; that is, when the defendant is sentenced under mandatory rather than advisory guidelines.[5] See Shelton, 400 F.3d at 1331. The defendant's burden with respect to the third prong is, then, "to show that the error actually did make a difference." Rodriguez, 398

---

[5]Garcia does not argue that there was constitutional Booker error. Even if he had, the Sixth Amendment violation described in Booker does not extend to prior convictions. See United States v. Orduno-Mireles, 405 F.3d 960, 962 (11th Cir.), cert. denied, No. 05-5141, 2005 WL 1673125 (U.S. Oct. 3, 2005). Garcia's status as a career offender was based on prior convictions.

F.3d at 1300. "[I]n applying the third prong, we ask whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion." Id. at 1301. Reasonable probability of a different result means a probability "sufficient to undermine confidence in the outcome." Id. at 1299 (citation omitted).

Garcia argues, in part, that the court's imposition of a term of 151 months' imprisonment, which was at the bottom of the guideline range it considered mandatory, shows reasonable probability of a lesser sentence. We have consistently found, however, that a sentence at the low end of the guideline range, standing alone, is insufficient to carry a defendant's burden of demonstrating a reasonable probability of a lesser sentence under advisory guidelines. See United States v. Fields, 408 F.3d 1356, 1361 (11th Cir.), cert. denied, No. 05-5157, 2005 WL 1673022 (U.S. Oct. 3, 2005). Garcia fails to offer any evidence, other than this bottom-of-the-range sentence, of a reasonable probability of a different result had the court applied the guidelines as advisory rather than as mandatory.[6] He

---

[6]Generally, we have found a defendant's plain error burden to be met in cases containing a clear record of a district court's articulated desire to impose a lower sentence than the guidelines permitted. Where the sentencing judge expresses the view that the sentence required by the guidelines is "too severe," or"more than appropriate," the defendant will meet his burden of showing a reasonable probability of a lesser sentence. Shelton, 400 F.3d at 1332. Similarly, the defendant meets his high burden where the district court imposes the minimum sentence under the guidelines and the judge remarks "that probably under the circumstances, that's a little high . . . but that's what the guidelines call for and that's what I'm obligated to sentence him." United States v. Henderson, 409 F.3d 1293, 1307 (11th Cir. 2005).

7

asserts that the court expressed sympathy for him, but does not quote or identify specific language to support this statement.[7]

To the contrary, court specifically found the sentence imposed to be "completely appropriate." R2 at 81. Further, in its discretion, it rejected Garcia's request for a downward departure under U.S.S.G. § 4A1.3, explaining that a review of Garcia's criminal conviction history demonstrated "a pattern of persistent criminal behavior" that left the court unable to depart downward from Garcia's assigned criminal history category VI. Finally, although the sentencing court in the present case offered Garcia an opportunity to reduce his sentence through substantial assistance to the government at some future point, it specifically rejected such a downward departure based upon the state of affairs at sentencing. In sum, Garcia has failed to establish a reasonable probability that the district court would have imposed a lower sentence. Thus, he has failed to meet his burden of showing that the error affected his substantial rights. Accordingly, we conclude that Garcia has failed to meet the difficult standard imposed for plain error review.

---

[7]In support of his contention, Garcia points to the following statement by the court: "I think one of the things clear to everyone [is that] the United States Sentencing Guidelines are fairly merciless." R2 at 55. Taken in context, however, this reflects the sentencing judge's general understanding of the guidelines rather than his view of the propriety of the sentence imposed upon Garcia thereunder.

## III. CONCLUSION

Because Garcia failed to preserve his Booker argument for appeal, we review his 151-month sentence for plain error. We find that Garcia's substantial rights were not affected by the district court's treatment of the Sentencing Guidelines as mandatory because nothing in the record demonstrates a reasonable probability that the court would have imposed a lesser sentence had the guidelines been advisory. Accordingly, Garcia's sentence is **AFFIRMED.**