[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-10854

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SHANE MARTIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 1:23-cr-00191-ECM-JTA-1

_____

Before NEWSOM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Shane Martin appeals the district court's application of a two-level sentencing enhancement for possession of a firearm in connection with an offense under U.S.S.G. § 2D1.1(b)(1). We affirm.

## I.

In April and May 2023, agents from the Drug Enforcement Administration, alongside local law enforcement, investigated methamphetamine distribution in Dothan, Alabama. As relevant here, agents conducted two warranted searches of local residences. At the first—a "narcotics stash house" used by Martin's co-conspirator, Michael Blackmon—officers unearthed two baggies containing suspected methamphetamine. At the second— Blackmon's residence—agents found an "unspecified amount of U.S. currency" and a loaded .38 caliber revolver.

Blackmon admitted that he had recently obtained multiple-ounce quantities of methamphetamine from Martin. He added that the drugs recovered from the stash house were purchased from Martin. These admissions confirmed what agents suspected: Blackmon was not merely Martin's buyer, but a co-conspirator in the distribution ring. Intercepted text messages and calls revealed that Blackmon and Martin discussed methamphetamine sales. On one occasion, Blackmon explained that Martin once "did [him] eight" ounces of methamphetamine for $1,000. And electronic

24-10854          Opinion of the Court          3

surveillance showed Martin meeting Blackmon at the stash house on April 25 and 26, 2023, coinciding with the texts and calls.

A grand jury indicted Martin, Blackmon, and five others for conspiring to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841 (b)(1)(A)(viii) and 846. Martin pleaded guilty.

The Probation Office prepared a Presentence Investigation Report. The Report calculated a base offense level of 32 because the conspiracy involved 340.2 grams of methamphetamine. It applied a two-level enhancement "because a dangerous weapon (including a firearm) was possessed" by Martin's co-conspirator, Blackmon. *See* U.S.S.G. § 2D1.1(b)(1) (Nov. 2023). After subtracting three levels for Martin's timely plea and acceptance of responsibility, the Report computed Martin's total offense level at 31. Martin's criminal history—including convictions for possession of marijuana, discharging a firearm into an occupied building, and multiple domestic violence offenses—resulted in a criminal history category of V. The Report calculated Martin's Guidelines range as 168 to 210 months' imprisonment.

The district court then held a sentencing hearing. Martin's counsel objected to the firearm enhancement, contending that Martin could not reasonably foresee that Blackmon would possess a firearm. In response, the government cited the "countless cases recognizing the connection between firearms and drug trafficking" and flagged Martin's own criminal history.

The district court sided with the government. The court emphasized Martin's (1) "close familial relationship with Mr. Blackmon"; (2) "prior involvement in drug distribution with the possession of a weapon"; and (3) that "Mr. Blackmon knew to reach out to Mr. Martin for the acquisition of a substantial amount of methamphetamine." The district court thus concluded that it "was reasonably foreseeable to Mr. Martin that Mr. Blackmon would have and would possess a weapon as part of the drug conspiracy." The court adopted the Report's Guidelines calculation and sentenced Martin to 168 months' imprisonment.

## II.

We review the district court's "findings of fact for clear error and the application of the Sentencing Guidelines to those facts de novo." *United States v. Sotis*, 89 F.4th 862, 878 (11th Cir. 2023) (quotation omitted). "Whether a defendant possessed a firearm for purposes of § 2D1.1(b)(1) is a factual finding that we review under the clear-error standard." *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017). For a finding to be clearly erroneous, this Court "must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation omitted).

## III.

The Sentencing Guidelines apply a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during an offense. U.S.S.G. § 2D1.1(b)(1). According to the Guidelines commentary, the enhancement applies "if the weapon

was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* § 2D1.1 cmt. n.11(A).  We have held that the enhancement "may be applied when a firearm is possessed by a co-conspirator." *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005).  To apply the enhancement to a co-conspirator, the government must prove that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant."  *Id.* (quotation omitted and emphasis deleted).

On appeal, Martin does not dispute the first three elements of that test.  Instead, he contends that the district court erred in applying the sentencing enhancement because he could not have reasonably foreseen Blackmon's firearm possession.  According to Martin, although "there was a familial connection," his "drug trade connection" to Blackmon "was minimal at best."

The district court did not clearly err in applying the firearm enhancement for three reasons.  *First*, Martin's criminal history belies his claim.  Martin was convicted in 2007 for possessing a "9 mm rifle" alongside a significant amount of marijuana in his vehicle.  Having possessed a firearm during his own drug-related offense, Martin was not blind to the "frequent and overpowering connection between the use of firearms and narcotics traffic." *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006) (quotation

omitted). That makes it more likely that Martin reasonably foresaw Blackmon's possession of a firearm.

*Second*, Martin and Blackmon's familial relationship does Martin no favors. At sentencing, Martin asserted that their "limited involvement" made it less likely that Martin could have predicted Blackmon "would have a firearm in dealing with him." Martin misconstrues the inquiry. The question is not what safety measures Blackmon took when meeting Martin, but whether Martin could foresee that Blackmon would possess a firearm during the relevant offense—the conspiracy to distribute and possess with intent to distribute a large quantity of methamphetamine.

Circuit precedent reinforces this conclusion. In *Fields*, for example, this Court affirmed the application of a firearm enhancement to a co-conspirator. *See* 408 F.3d at 1360. We explained that the "close relationship" between co-conspirators who "referred to each other as cousins" "increase[d] the probability that Fields would be able to foresee [his co-conspirator's] actions, including his possession of a firearm in connection with his drug business." *Id.* at 1359. So too here. Martin's familial relationship with Blackmon makes it more likely that he could reasonably foresee Blackmon's firearm possession—not less.

*Third*, Martin's prior drug-related history with Blackmon tells a similar story. Blackmon divulged to agents that the two baggies of methamphetamine recovered from the stash house were "purchased from Martin." Intercepted communications showed the two men wrangling over price; on one occasion,

24-10854                Opinion of the Court                7

Martin explained that he could only supply Blackmon with four ounces of methamphetamine rather than the requested-for five. And electronic surveillance captured Martin and Blackmon meeting multiple times at the stash house during the alleged conspiracy.  Finally, at sentencing, Martin's counsel conceded that "Blackmon was heavily involved in the drug trade."

"[W]here the conspiracy involved trafficking in lucrative and illegal drugs," we have "found it reasonably foreseeable that a co-conspirator would possess a firearm." *Pham*, 463 F.3d at 1246. Martin's awareness of Blackmon's role in narcotics distribution, coupled with his own experience that "guns are a tool of the drug trade," make his arguments to the contrary unpersuasive. *United States v. Cruz*, 805 F.3d 1464, 1474 (11th Cir. 1986) (quotation omitted).  That conclusion holds despite Martin's "protestations that [he] w[as] in fact unaware of the firearm possession." *United States v. Martinez*, 924 F.2d 209, 210 (11th Cir. 1991).

## IV.

Because the district court did not clearly err in applying the firearm enhancement, we **AFFIRM**.