[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 5, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15337
Non-Argument Calendar
_____

D. C. Docket No. 08-00032-CR-3-RV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VINCENT RAMON PLUMMER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 5, 2009)

Before BIRCH, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendant-Appellant Vincent Plummer appeals his 64-month sentence,

imposed following his guilty plea for conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846. Plummer asserts that the district court erred by finding he was not eligible for a reduction under the safety-valve provision, U.S.S.G. § 5C1.2, and for enhancing his sentence due to his co-conspirator's possession of a firearm in furtherance of the conspiracy, U.S.S.G. § 2D1.1(b)(1). For the reasons stated herein, we affirm.

## I. BACKGROUND

According to Plummer's indictment, Plummer was involved in a conspiracy to distribute 100 kilograms or more of marijuana in "the Northern District of Florida and elsewhere" from on or about "January 1, 2006 through March 1, 2008." The indictment did not identify Plummer's co-conspirators. At his change of plea hearing, Plummer pleaded guilty to the charges in the indictment without a written agreement.

As a part of his plea colloquy, Plummer admitted that he agreed to provide drugs to others in exchange for cash and that the amount of drugs involved exceeded 100 kilograms. According to the presentence investigation report ("PSI") and the government's factual proffer at the change of plea hearing, Plummer was involved with John and Justin Mikhael in a scheme to deliver large quantities of marijuana. The Mikhael brothers were also charged with the

2

conspiracy and had already pleaded guilty at the time of Plummer's change of plea hearing. Plummer's role in the conspiracy was to deliver the drugs to Justin's residence. He usually drove a rental car when making these deliveries. On April 5, 2007, police searched Justin Mikhael's residence and found drugs, a shotgun, and a handgun. Ten months later, in February 2008, Mississippi state police stopped Plummer's rental car for a traffic violation. During a subsequent search, the Mississippi police found marijuana and arrested Plummer.[1]

The probation officer, in calculating the applicable guideline range, found that Plummer's offense level was 26 based on the amount of drugs involved. The probation officer also applied a 2-level enhancement for possession of a firearm by a co-conspirator, U.S.S.G. § 2D1.1(b)(1), and a 3-level reduction for acceptance of responsibility, resulting in a total offense level of 25. Although the probation officer noted several prior criminal activities, he did not assign any criminal history points; accordingly, Plummer's criminal history category was I. Based on these calculations, Plummer faced a guidelines range of 57 to 71 months' imprisonment. The range, however, became 60 to 71 months' imprisonment because the offense carried a statutory mandatory minimum sentence of 60 months.

---

[1] In addition to admitting the facts in the government's factual proffer, Plummer admitted to the factual statements set forth in the PSI by not objecting to these facts. United States v. Burge, 407 F.3d 1183, 1191 (11th Cir. 2005).

The probation officer originally included a reduction from this mandatory minimum sentence under the safety-valve provision, U.S.S.G. § 5C1.2, but removed this recommendation upon learning from the government that Plummer had not provided any information to authorities regarding his arrest in Mississippi. Plummer objected to the removal of this reduction, arguing that he had tried to cooperate but that authorities had refused to interview him in the presence of his attorney. He further asserted that the Mississippi arrest was unrelated to the conspiracy identified in his indictment, noting that the Mikhael brothers had been arrested over ten months before he was caught with the drugs in Mississippi. Plummer also opposed the firearm enhancement, asserting that no evidence connected him to the weapons found in Justin Mikhael's house. He asserted that his last visit to the house was in January 2007 and there was no evidence that the firearms, which were found in April 2007, had been present at that time.

At sentencing, the district court heard arguments on Plummer's objections. Regarding whether Plummer had been cooperative in providing information on the conspiracy, Plummer's counsel explained that Plummer had been reluctant to speak with authorities because he was still awaiting resolution of the charges in Mississippi. The court recessed to allow Plummer, his counsel, and the government to meet. After the recess, the government told the court that it was

4

still not satisfied with Plummer's information, as Plummer continued to refuse to discuss the Mississippi arrest. The court found that the Mississippi arrest involved the same course of conduct and was within the time frame of the instant conspiracy. Accordingly, because Plummer was not cooperative in providing information regarding this arrest, the court determined that Plummer had not shown he was eligible for the safety-valve reduction and overruled this objection.

With respect to the firearm enhancement, Special Agent Bettis testified that phone call records confirmed that Plummer was in contact with Justin Mikhael through March 2007. The firearms were found in Justin's home on April 5, 2007. Bettis stated that no guns were found on Plummer and information indicated that the shotgun had been at the house only a short time. Although Bettis could not confirm how long the firearms had been in the home, he noted that the conspiracy involved a substantial amount of drugs worth about $150,000, and it was likely that the conspirators would have possessed guns to protect the drugs. Based on this testimony, the court overruled Plummer's objection and found that the firearms were associated with drug activity and the possession of a firearm by a co-conspirator in furtherance of the conspiracy was reasonably foreseeable. The court then considered the advisory guidelines range, the statutory mandatory minimum, the facts of the case, and the sentencing factors in 18 U.S.C § 3553(a) and imposed

5

a sentence of 64 months' imprisonment.

## II. ANALYSIS

*A.     Safety-Valve Reduction*

When reviewing the denial of a safety-valve reduction, we review the district court's factual determinations for clear error and its legal conclusions de novo. United States v. Poyato, 454 F.3d 1295, 1297 (11th Cir. 2006). "Safety-valve relief allows for sentencing without regard to any statutory minimum, with respect to certain offenses, when specific requirements are met." United States v. Brehm, 442 F.3d 1291, 1299 (11th Cir. 2006) (citing 18 U.S.C. § 3553(f)); see also U.S.S.G. § 5C1.2. "The burden is on the defendant to show that he has met all of the safety valve factors." United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004). The final factor, and the only factor relevant to this appeal, is that the defendant "has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(5).

This final factor is a "tell-all " provision: to meet its requirements, the defendant has an affirmative responsibility to "truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct." Johnson, 375 F.3d at 1302; see also U.S.S.G. § 5C1.2,

6

comment. (n.3) ("'[O]ffense or offenses that were part of the same course of conduct or of a common scheme or plan,' as used in subsection (a)(5), mean the offense of conviction and all relevant conduct."). Thus, it is the offense for which the defendant is convicted that determines the scope of information which the defendant must disclose. United States v. Figueroa, 199 F.3d 1281, 1283 (11th Cir. 2000) ("This plain language requires a defendant to both truthfully and fully disclose information within her knowledge relating to the crime for which she is being sentenced.").

Here, Plummer was convicted of conspiracy to possess with intent to distribute over 100 kilograms of marijuana. Plummer argued at sentencing and now argues on appeal that this conspiracy ended with the Mikhaels' arrest in April 2007 and that the marijuana in his possession at the time of his arrest on February 19, 2008 was unrelated to this conspiracy. Accordingly, he asserts that his refusal to provide information regarding this marijuana did not violate the "tell-all" requirement for safety-valve relief. Plummer's indictment, however, did not name Plummer's co-conspirators and stated that the conspiracy extended through March 1, 2008. When pleading guilty, Plummer admitted the allegations of the indictment, including the dates of the conspiracy and that the conspiracy with unnamed co-conspirators involved the distribution of marijuana in Northern

7

Florida "and elsewhere." Given the large amount of drugs and the admitted timing of the conspiracy, the district court did not clearly err in reasonably inferring that the marijuana in Plummer's possession at the time of his arrest in Mississippi was related to the conspiracy for which he was being sentenced. See Johnson, 375 F.3d at 1302-03 (holding that information regarding the intended distribution of marijuana related to defendant's convicted offense of cultivating 273 marijuana plants). We hold, therefore, that the court properly determined that information about this marijuana related to Plummer's offense of conviction. It is undisputed that Plummer refused to give law enforcement officers information about this marijuana. Thus, the court did not err by finding that Plummer failed to satisfy the full scope of disclosure required by the safety-valve provisions.

B.    *Firearm Enhancement*

Next, Plummer argues that the district court erred by applying the two-level enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1). Plummer asserts that the government's evidence does not establish that he knew that his co-conspirator possessed firearms or that such possession was reasonably foreseeable. He further contends, for the first time on appeal, that requiring him to rebut the presumption that firearms possessed by a co-conspirator are connected to the drug conspiracy violates his due process rights.

8

We review "the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts de novo." United States v. Gallo, 195 F.3d 1278, 1280 (11th Cir. 1999). The § 2D1.1(b)(1) enhancement may be applied when the firearm is possessed by a co-conspirator. United States v. Fields, 408 F.3d 1356, 1359 (11th Cir.), cert. denied 546 U.S. 886 (2005). The enhancement applies to a co-conspirator when the government establishes by a preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." Id. Furthermore, it is well established that:

> The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. Once the government shows that a firearm was present, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable.

Id. (citations omitted); see Application Note 3 to U.S.S.G. § 2D1.1(b)(1).

In this case, the possessor was admitted co-conspirator Justin Mikhael and the firearms were found at his home in April 2007. The unchallenged facts in the PSI established that Plummer went to this house to deliver drugs as part of his role in the conspiracy. The evidence, therefore, was sufficient to support the court's

9

presumption that these firearms were possessed in furtherance of the conspiracy and it is undisputed that Plummer presented no evidence to rebut this presumption. It is also clear from the admitted dates of the conspiracy that Plummer was a member of the conspiracy at the time the firearms were found in Mikhael's possession. Accordingly, the district court properly found that the government established the first three elements of the enhancement.

As to the reasonable foreseeability of the firearms' possession, we have noted that "numerous cases have recognized that guns are a tool of the drug trade. There is a frequent and overpowering connection between the use of firearms and narcotics traffic." Pham, 463 F.3d at 1246 (citing United States v. Cruz, 805 F.2d 1464, 1474 (11th Cir. 1986)). For this reason, we have found it reasonably foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs. See United States v. Fields, 408 F.3d 1356, 1359 (11th Cir. 2005); United States v. Freyre-Lazaro, 3 F.3d 1496, 1506 (11th Cir. 1993) (holding that it was reasonably foreseeable that one co-conspirator would possess a firearm while transporting 13 kilograms of cocaine). We have further upheld application of the § 2D1.1(b)(1) enhancement even where a defendant claims he was actually unaware of the firearm possession. United States v. Martinez, 924 F.2d 209, 210 (11th Cir. 1991). In light of the large

10

amount of drugs and money involved in this conspiracy, the district court did not clearly err by finding that it was reasonably foreseeable that a firearm would be possessed by a co-conspirator.

With respect to Plummer's claim that the district court violated his due process rights by shifting the evidentiary burden to him to show that a connection between the firearms and the conspiracy was "clearly improbable," we note that because Plummer did not raise this argument below, it is subject only to plain error review. United States v. Hall, 314 F.3d 565, 566 (11th Cir. 2002). Under this standard, Plummer's claim necessarily fails. Where firearms have been found present during a drug conspiracy, neither the Supreme Court nor this court has held that applying a rebuttable presumption that the firearms are connected to the conspiracy violates a defendant's due process rights. Where there is no controlling case law on the issue, there can be no plain error. United States v. Magluta, 198 F.3d 1265, 1280 (11th Cir. 1999). As such, the district court did not plainly err by presuming that the firearms possessed by a co-conspirator were connected to the offense. Because Plummer failed to rebut this presumption, we conclude that the district court properly applied the firearm enhancement.

## III.  CONCLUSION

For the foregoing reasons, Plummer's sentence is **AFFIRMED**.

11