[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14913
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-00107-MHC-AJB-2

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

versus

ERIC SWINEY,

                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 24, 2017)

Before JORDAN, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Eric Swiney appeals his sentence of 70 months' imprisonment imposed after he pled guilty to conspiring with Jorge Collier to possess cocaine with the intent to distribute it.  Swiney argues that the district court made two errors in calculating his sentence:  First, the court applied a two-level enhancement to his offense level under the Sentencing Guidelines for possessing a dangerous weapon.  Second, the court denied him safety valve relief under the guidelines.  After careful review, we reject both of these challenges as unfounded and affirm Swiney's sentence.

## I.  BACKGROUND

Swiney pled guilty to one count of conspiracy to possess with intent to distribute at least 500 grams of a mixture containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), pursuant to a written plea agreement.  The factual basis for the plea was a traffic stop that produced evidence of cocaine distribution and resulted in Swiney's arrest.  One evening, Swiney drove a black truck into the driveway of a residence in Chamblee, Georgia.[1]  Collier, who was a passenger in the truck, retrieved a bag from the rear seat of the truck and carried it inside the residence.  Swiney remained in the truck.  About 25 minutes later, Collier returned carrying a bag, placed the bag in the rear passenger area of the truck, and got into the truck's passenger seat.  Swiney drove away from the house and was stopped shortly thereafter by law enforcement.  Law enforcement searched the truck and

---

[1] This residence was a suspected drug stash house and was under surveillance by law enforcement.

2

found four packages containing 3.996 kilograms of cocaine in a black bag located in the truck's rear passenger area. Law enforcement also discovered a loaded handgun in the truck's front center console.

Before sentencing, the probation office prepared a pre-sentence investigation report ("PSI") for Swiney that detailed his offense conduct and recommended several sentencing adjustments. As relevant here, the PSI recommended applying a two-level enhancement to Swiney's base offense level for possessing a dangerous weapon in connection with his crime because of the handgun discovered in the truck he was driving. Swiney objected that the truck belonged to Collier and there was no evidence he knew about the handgun. The PSI also recommended denying Swiney relief under the guidelines' "safety valve" because he possessed a weapon in connection with his offense and because he was less than forthcoming in his interview with law enforcement about his offense conduct. Swiney objected that he was entitled to relief even if his co-defendant possessed a firearm and that the only information he may have withheld from law enforcement related to a pending criminal case and was not relevant to his offense of conviction. Both of these issues carried over to sentencing.

At sentencing, Swiney objected once more to the two-level possession of a dangerous weapon enhancement and the denial of safety valve relief. After hearing argument from both sides, the district court found that Collier possessed

3

the firearm in furtherance of the drug distribution conspiracy and that Swiney reasonably could have foreseen that possession.  The court thus applied the two-level possession of a dangerous weapon enhancement over Swiney's objection.  As for safety valve relief, the court heard argument from Swiney and the government and also listened to testimony from both the law enforcement agent who debriefed Swiney and from Swiney himself.  The court found that Swiney was not forthcoming with law enforcement and therefore denied safety valve relief.  It adopted the PSI's findings of fact and conclusions of law and calculated Swiney's guidelines range at 70 to 87 months' imprisonment based on a total offense level of 27 and a criminal history category I.  Ultimately, the court imposed a sentence of 70 months' imprisonment.  This appeal followed.

## II.    STANDARDS OF REVIEW

With respect to the Sentencing Guidelines, we review "purely legal questions *de novo*, a district court's factual findings for clear error, and, in most cases, a district court's application of the guidelines to the facts with 'due deference.'" *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1136–37 (11th Cir. 2004).  When reviewing a district court's application of a guidelines provision to the facts, "due deference" is tantamount to clear error review.  See *United States v. White*, 335 F.3d 1314, 1318–19 (11th Cir. 2003).  For a finding to be clearly erroneous, we "must be left with a definite and firm conviction that a mistake has

4

been committed." *Rodriguez-Lopez*, 363 F.3d at 1137 (internal quotation marks omitted).

Likewise, with respect to the district court's denial of safety valve relief, we review the court's factual determinations for clear error and its legal interpretations *de novo*. *United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir. 2004).

## III.    DISCUSSION

### A.    The District Court Did Not Clearly Err in Enhancing Swiney's Sentence for Possessing a Dangerous Weapon in Connection with His Crime.

The district court applied to Swiney's offense level a two-level enhancement for possessing a dangerous weapon in connection with his crime, pursuant to U.S.S.G. § 2D1.1(b)(1). The court found that Swiney's co-conspirator Collier possessed a firearm in connection with their conspiracy and that Swiney could have foreseen that possession. Swiney challenges the foreseeability finding, but we conclude that the district court did not clearly err. We affirm the court's application of the two-level enhancement.

Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" in connection with a conspiracy to possess and distribute drugs. U.S.S.G. § 2D1.1(b)(1). An application note clarifies that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* § 2D1.1 cmt. n.11. "Once the government

5

shows that a firearm was present, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005). A co-conspirator's possession of a firearm may be attributed to a defendant for the purpose of applying the enhancement if: "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006) (internal quotation marks omitted). "There is a frequent and overpowering connection between the use of firearms and narcotics traffic. To that end, we have found it reasonably foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs." *Id.* at 1246 (internal quotation marks omitted).

The district court applied the two-level § 2D1.1(b)(1) enhancement to Swiney based on Collier's possession of a firearm. The court found that Collier possessed a firearm, the possession was in furtherance of the conspiracy to distribute cocaine, Swiney was a member of the conspiracy at the time Collier possessed the firearm, and Swiney could have reasonably foreseen Collier's firearm possession.

6

None of these factual findings was clearly erroneous.  Swiney pled guilty to conspiring with Collier to distribute 3.996 kilograms of cocaine.  In his sentencing memorandum and at his sentencing hearing, Swiney repeatedly stated that the truck he drove in furtherance of the conspiracy belonged to Collier.[2]  The factual basis of Swiney's plea established that Swiney drove the truck and that Collier sat in the passenger seat.  This factual basis also established that the front center console of the truck contained a loaded handgun.  These facts provided a sufficient basis for the district court to find that Collier possessed the handgun located beside him in his truck in furtherance of the drug conspiracy in which he and Swiney were participating at the time.  Our precedent makes clear that where, as here, a defendant participated in a conspiracy involving trafficking in lucrative and illegal drugs, he reasonably could have foreseen that his co-conspirators would possess firearms.  *See id.*

Swiney challenges this foreseeability finding, contending that there was no evidence he knew about the firearm.  But the § 2D1.1(b)(1) enhancement can apply to a co-conspirator's foreseeable firearm possession even when the defendant did

---

[2] On appeal, Swiney contends for the first time that the truck belonged to Collier's girlfriend rather than Collier.  There is evidence in the record that the truck was registered to Collier's girlfriend but that both Collier and his girlfriend were listed on the truck's financing documents.  This evidence does not leave us "with a definite and firm conviction that a mistake has been committed" by the district court in its factual findings.  *Rodriguez-Lopez*, 363 F.3d at 1137 (internal quotation marks omitted).

7

not actually know the co-conspirator possessed a firearm. *See, e.g.*, *United States v. Martinez*, 924 F.2d 209, 210 (11th Cir. 1991).

Swiney also argues that *Pham* and a case on which it relies are inapposite because, in those cases, there were facts supporting foreseeability that are not present here. In *Pham*, we relied on evidence of intercepted telephone conversations in which the defendant's co-conspirator acknowledged that he had a gun and might use it in connection with drug debts. 463 F.3d at 1241. But the intercepted conversations showed that the co-conspirator possessed a firearm in furtherance of the conspiracy; they had nothing to do with whether that possession was foreseeable to the defendant. *See id.* at 1245–46. Instead, we upheld the district court's foreseeability finding based on "the vastness of the conspiracy and the large amount of drugs and money being exchanged." *Id.* at 1246. Swiney also points to *Fields*, on which *Pham* relied, where we noted that the defendant and his co-conspirator had a close and longstanding relationship which increased the probability that Fields would be able to foresee his co-conspirator's firearm possession. 408 F.3d at 1359. Although we did note this fact, it was only as additional support for our foreseeability conclusion. *See id.* We based this conclusion primarily on other facts:

> The firearms were present at locations from which [the co-conspirators] sold drugs. The two co-conspirators trafficked in lucrative and illegal drugs. Undoubtedly, part and parcel of their business was dealing with individuals who were drug-addicted, many

8

of whom had been convicted of crimes.  It is not clearly improbable that [the co-conspirators] felt the need to protect their inventory and proceeds as well as themselves while they were engaging in that high risk activity.

*Id.*

We are not "left with a definite and firm conviction that" the district court erred in finding that Swiney could have foreseen his co-conspirator's possession of a firearm.  *Rodriguez-Lopez*, 363 F.3d at 1137 (internal quotation marks omitted).  Indeed, we have upheld a district court's foreseeability finding in similar circumstances.  *See United States v. Freyre-Lazaro*, 3 F.3d 1496, 1506 (11th Cir. 1993) (explaining "it was reasonably foreseeable that" a co-conspirator "would carry a weapon" because that co-conspirator was "transporting thirteen kilograms of cocaine").  Accordingly, we affirm the district court's application of the two-level enhancement for possession of a dangerous weapon.[3]

## B. The District Court Did Not Clearly Err in Denying Swiney Safety Valve Relief.

The district court denied Swiney relief under the guidelines' safety valve.  *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.  The court denied safety valve relief because it concluded that Swiney was not completely forthcoming with law enforcement about his conduct surrounding his offense of conviction.  Swiney

---

[3] Swiney also argues for the first time on appeal that Collier might not have possessed the firearm at all or in furtherance of the conspiracy.  We disagree.  The record reflects that Collier pled guilty to possessing the firearm in furtherance of the crime.

9

challenges that finding, but the district court did not clearly err.  We affirm the denial of safety valve relief.

"Safety-valve relief allows for sentencing without regard to any statutory minimum, with respect to certain offenses, when specific requirements are met." *United States v. Brehm*, 442 F.3d 1291, 1299 (11th Cir. 2006) (citing 18 U.S.C. § 3553(f)); *see also* U.S.S.G. § 5C1.2.  To be eligible for safety valve relief under U.S.S.G. § 5C1.2(a), a defendant must satisfy five requirements:  (1) he has no more than one criminal history point; (2) he did not use violence, credible threats of violence, or possess a firearm or other dangerous weapon in connection with the offense; (3) the offense did not result in death or serious bodily harm; (4) he was not an organizer, leader, manager, or supervisor in the offense; and (5) no later than the time of the sentencing hearing he provided the government with all information and evidence that he had concerning the offense or offenses that were part of the same course of conduct or common scheme or plan.  U.S.S.G. § 5C1.2(a).  The burden is on the defendant to show that he has met all of the safety valve requirements.  *Johnson*, 375 F.3d at 1302.

The final requirement is a "'tell-all' provision:  to meet its requirements, the defendant has an affirmative responsibility to truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct."  *Id.*  "The burden is on the defendant to come forward and to supply

10

truthfully to the government all the information that he possesses about his involvement in the offense, including information relating to the involvement of others and to the chain of the narcotics distribution." *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997).

The district court concluded that Swiney did not qualify for safety valve relief based on its finding that Swiney did not truthfully provide the government all the information and evidence in his possession concerning his offense. Specifically, the court found that Swiney was not completely truthful with respect to his involvement with Collier and potentially others and his knowledge about other drug trafficking crimes that may have occurred.

The district court did not clearly err in making this finding. In his interview with law enforcement, Swiney stated that he did not know anybody who sold cocaine. Yet the undisputed facts in his PSI that he used cocaine from the age of 21 until age 42, sometimes on a daily basis, made that answer implausible. This inconsistency alone was enough to support the district court's finding that Swiney did not truthfully provide the government with all the information and evidence concerning his offense.

Swiney challenges the district court's finding on two grounds. First, he contends that he was truthful and simply had no information to provide. But Swiney's answer identified above shows that he made at least one misstatement.

11

Second, Swiney argues that the government agents he spoke with were frustrated because he refused to discuss conduct unrelated to his offense of conviction.  But the district court explicitly based its finding solely on his lack of candor about the conduct surrounding his offense of conviction.  We thus uphold the district court's finding.

Because a defendant must meet all five requirements to qualify for safety valve relief and Swiney failed to satisfy the fifth requirement, he was ineligible for safety valve relief.  *See* U.S.S.G. § 5C1.2(a); *Johnson*, 375 F.3d at 1302.  We affirm.

## IV.    CONCLUSION

For these reasons, the judgment of the district court is **AFFIRMED**.