[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**September 9, 2005**
**THOMAS  K. KAHN**
**CLERK**

_____

No. 03-12538
Non-Argument Calendar

_____

D.C. Docket No. 02-00370-CR-T-30-MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILFREDO CUERO HURTADO,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

**(September 9, 2005)**

Before TJOFLAT, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

In September 2002, a small boat left Buenaventura, Colombia and headed

towards a speed boat anchored a short distance away.  The small boat carried five

men, four of whom had been hired by the fifth man to drive the speed boat to Guatemala. On arriving at the speed boat, the four crew members, one of which was Wilfredo Cuero Hurtado, boarded it and departed for Guatemala.

Two days into the journey, with Hurtado captaining the speed boat, a United States navy helicopter spotted the speed boat and contacted the United States Coast Guard. Upon seeing the helicopter, Hurtado attempted to flee and the crew began dumping several bales of cocaine into the ocean. Despite the escape effort, the Coast Guard vessel overtook the speed boat and recovered the cocaine. A later analysis revealed that the bales contained 1,586.6 kilograms of cocaine.

Hurtado and the three other crew members were each indicted for one count of possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, and one count of conspiracy to commit the same, in violation of 46 App. § 1903(a), (g), (j), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii). Hurtado pleaded guilty to the possession count and the government dismissed the conspiracy count. Hurtado was sentenced to 210 months in prison. He now challenges his conviction and sentence.

**I.**

Hurtado contends that during his Rule 11 hearing the district court failed to advise him of his right to: (1) plead not guilty and persist in that plea; (2) a have jury trial; (3) be represented by counsel, whether retained or appointed; (4) confront and cross examine adverse witnesses; (5) be protected from compelled self-incrimination; (6) testify and present evidence; and, (7) compel the attendance of witnesses. And, according to Hurtado, the court failed to inform him that he would waive these rights by pleading guilty. He argues that without being informed of these rights, he did not know and understand the consequences of his plea, and therefore, it was not made knowingly, voluntarily, and intelligently.

We review the issue of a Rule 11 violation for plain error when, as here, the defendant did not raise any Rule 11 issue before the district court. United States v. Lejarde-Rada, 319 F.3d 1288, 1290 (11th Cir. 2003). Under that standard, the defendant has the burden to prove that (1) the district court committed an error (2) that is plain, (3) that affected the defendant's substantial rights, and (4) that seriously implicated the fairness, integrity, or public reputation of judicial proceedings. Id.

When a defendant enters a guilty plea, a district court must ensure that "the three core concerns of Rule 11 of the Federal Rules of Criminal Procedure have been met: the guilty plea must be free from coercion; the defendant must

understand the nature of the charges; and, the defendant must know and understand the consequences of his guilty plea." Id. at 1289. Recently, the Supreme Court held that "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered his plea." United States v. Dominguez-Benitez, 542 U.S. 74, __, 124 S. Ct. 2333, 2340 (2004).

Here, the district court did not err. A defendant's written plea agreement is part of the record of his Rule 11 hearing. United States v. Jones, 143 F.3d 1417, 1420 (11th Cir. 1998). Hurtado's plea agreement stated,

> The defendant acknowledges that [he] is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind . . . and without threats, force, intimidation, or coercion of any kind. . . . The defendant also understands that [he] has the right to plead not guilty or to persist in that plea if it has already been made, and that [he] has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against [him], the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in [his] defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.

(R.1:35:13–14.) In other words, Hurtado's plea agreement informed him of his rights. The agreement also stated that Hurtado understood that by pleading guilty

4

he gave up these rights. The magistrate judge, in front of whom Hurtado entered his guilty plea, twice asked Hurtado, "do you understand all the terms contained in the plea agreement?" (R.4:10; 14–15.) Hurtado twice responded, "Yes." (R.4:11; 15.) Hurtado, then, cannot contend now that he wasn't informed of his rights, or that his guilty plea was not knowingly, voluntarily, and intelligently given.

Even if the district court had erred at the Rule 11 hearing, however, Hurtado would still lose. That's because he has not stated, in his initial brief or anywhere else, that he would not have pleaded guilty but for the magistrate judge's failure to inform him of all his Rule 11 rights. Without such an allegation, we cannot say that Hurtado's Rule 11 hearing was plainly erroneous. See Dominguez-Benitez, 542 U.S. at __, 124 S.Ct. at 2340.

## II.

Hurtado also contends that his sentence violated the Sixth Amendment as interpreted by United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005). Because Hurtado raised the Booker issue for the first time on appeal, we review his contention for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied ___ U.S. ___, 2005 WL 483174 (Jun 20, 2005).

We have found that a district court might make two errors when sentencing a defendant pre-Booker: a constitutional error and a statutory one. "The

5

constitutional error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; the error is in the mandatory nature of the guidelines once the guidelines range has been determined." United States v. Mathenia, 409 F.3d 1289, 1291 (11th Cir. 2005) (quotations omitted). "The statutory error occurs when the district court sentences a defendant 'under a mandatory [g]uidelines scheme, even in the absence of a Sixth Amendment enhancement violation." Id. (quoting United States v. Shelton, 400 F.3d 1325, 1330–31 (11th Cir. 2005)).

Here, the district court did not make a Booker constitutional error because Hurtado pleaded guilty to the facts underlying his conviction for possession of cocaine and the enhancement for captaining the boat under U.S.S.G. § 2D1.1(c)(3). The district court did make a Booker statutory error, however, because it sentenced Hurtado under a mandatory guidelines scheme. See Shelton, 400 F.3d at 1330–31. We have held that this error is plain. Id. at 1331.

Hurtado argues that this error affected his substantial rights because the district court said at his sentencing hearing that it was "going to give [Hurtado] the least sentence that [it could] give [him] under those guidelines." (R.5:7.) That, contrary to Hurtado's argument, is not enough to demonstrate that the district court's Booker statutory error affected his substantial rights.

6

First, we have held that "the fact that the district court sentenced the defendant to the bottom of the applicable guidelines range establishes only that the court felt that sentence was appropriate under the mandatory guidelines system. It does not establish a reasonable probability that the court would have imposed a lesser sentence under an advisory regime." United States v. Fields, 408 F.3d 1356, 1361 (11th Cir. 2005).

Second, as we stated in Shelton, "the plain error test is difficult to meet, and in particular, the burden of showing prejudice to meet the third-prong requirement is anything but easy." Shelton, 400 F.3d at 1331–32 (quotations omitted). In Shelton, the district court "expressed several times its view that the sentence required by the Guidelines was too severe" and said that the low-range sentence it was permitted to give under the guidelines was "'more than appropriate.'" Id. at 1332. Those comments, taken together, were satisfactory to meet the heavy burden of showing under plain error review that the error affected his substantial rights.

Here, the district court expressed no such regret at having to apply the sentencing guidelines to Hurtado. Nor did it suggest that the guidelines were particularly harsh in his case. Rather, the district court merely sentenced him to the low end of guidelines, having considered the § 3553(a) factors, as it had every

7

right to do.  This, we held in <u>Fields</u>, is not enough to meet the third prong prejudice test under plain error review.

## III.

Accordingly, we AFFIRM Hurtado's conviction and sentence.

TJOFLAT, Circuit Judge, specially concurring:

The court rejects appellant's <u>Booker</u> claim because, although the district court's error in sentencing appellant under a mandatory guidelines scheme is plain, appellant has not shown that the error affected his substantial rights. He has not done so because he can't point to anything the court said during the sentencing hearing that would permit us to conclude that but for the mandatory nature of the guidelines, the court would have imposed a lesser sentence. Put another way, the court failed to utter what I call the "magic words." <u>United States v. Thompson</u>, No. 04-12218 2005 WL 2099784, at * 17-19 (11th Cir. Sept. 1, 2005) (Tjoflat, J., dissenting). Were we writing on a clean slate, I would jettison the magic words formulation, which the court coined in <u>United States v. Rodriguez</u>, vacate appellant's sentence, and remand the case for resentencing under <u>Booker</u>'s new sentencing model. As I explained in <u>Thompson</u>, the <u>Rodriguez</u> formulation "fosters disrespect for the rule of law. *See* 18 U.S.C. § 3553(a)(2)(A) ("The court, in determining the particular sentence to be imposed, shall consider the need for the sentence imposed to . . . promote respect for the law. . . .")." <u>United States v. Thompson</u>, 2005 WL 2099784, at * 18.